NATHANIEL J. HOLDEN *vs.* DAVID BLANEY & others.

Essex. Nov. 6, 1875. — Jan. 29, 1876. COLT, MORTON & LORD, JJ., absent.

A testator by his will provided that the residue of his estate should be divided into equal shares, and that one portion should be paid to each of his surviving children and that the shares to be paid to his married daughters should be paid to them free from the control of their husbands, and that the daughters should alone have the right to use their respective shares. A codicil to the will directed that the share of one of the daughters should "be held in trust" by the executors, and provided that "they are hereby directed to pay over to her, my said daughter, from time to time, a sufficiency for her comfortable support and maintenance during the term of her natural life, excepting only, that in case she shall survive her said husband, all the remaining portion of her share of my estate shall then be paid over to her in full. My object in thus limiting the payment of my said daughter's share of my estate during the lifetime of her said husband, is to prevent his having any share or benefit of or from my estate." The daughter died after the testator, and in the lifetime of her husband, leaving a will by which she bequeathed her share of her father's estate. *Held,* that she had a vested interest in fee in her father's estate; that the time of payment to her was only postponed by the codicil; and that her executor was entitled to said share.

BILL IN EQUITY by the executor of Mary B. Sawyer against the executors of Jason Chamberlain, alleging the following facts:

The will of Jason Chamberlain, dated February 24, 1871, after making certain specific bequests, provided as follows:

" Fourth. All the rest and residue of my estate remaining after satisfying the foregoing bequests, of every name and nature, that I shall die seised of and possessed, or to which I shall be in any way entitled at the time of my decease, wherever and however the same may be situated, I do give, devise and bequeath the same in six equal shares and portions, to wit: one share to each of my five surviving children, namely, Ellen Blaney, wife of David Blaney, Mary B. Sawyer, wife of Luther D. Sawyer, Jason Chamberlain, Junior, Sylvester S. Chamberlain and George Chamberlain, and the remaining one equal share equally to and among my four grandchildren who are the children and legal representatives of my late daughter, Ann S. Huntoon, and Frederick W. L. Huntoon, both now deceased, to have and to hold the same in five equal shares and portions to them my said five named surviving children, and the remaining one equal share equally to and among my said four grandchildren and to their respective heirs and assigns forever. But I do order and direct that the equal shares and portions of my estate herein bequeathed to my said married daughters, Ellen Blaney and Mary B. Sawyer, respectively, shall be for their own sole and separate use and control, and subject to no right or control of their respective husbands, and they my said daughters, and they only, shall have the right to use and dispose of their respective portions herein bequeathed to them."

On December 16, 1871, Chamberlain made a codicil to his will, the material parts of which are as follows:

" I, Jason Chamberlain, the testator of the foregoing will, do hereby make this present codicil, which I do order and direct shall be taken as a part of my said foregoing last will and testament, which will, in all respects, excepting wherein it is altered or changed by this codicil, I do hereby republish and affirm.

" First. I do hereby order and direct that the share or part of my estate bequeathed in the fourth item of my said foregoing will to my daughter Mary B. Sawyer, wife of Luther D. Sawyer, shall be held in trust by my executors and trustees, and they are

hereby directed to pay over to her, my said daughter, from time to time, a sufficiency for her comfortable support and maintenance during the term of her natural life, excepting only that in case she shall survive her said husband, all the remaining portion of her share of my estate shall then be paid over to her in full. My object in thus limiting the payment of my said daughter's share of my estate, during the lifetime of her said husband, is to prevent his having any share or benefit of or from my estate, because I consider that he does not treat my said daughter as a kind and dutiful husband should and would treat a dutiful wife."

Chamberlain died on October 13, 1872, and his will and codicil were duly admitted to probate. On May 10, 1874, Mary B. Sawyer died, leaving a will, in which the plaintiff was named as executor, and disposing of all her estate. Her husband survived her.

The prayer of the bill was that the defendants should pay to the plaintiff Mary B. Sawyer's share of her father's estate.

The defendants demurred for want of equity; and the case was reserved by *Devens*, J., on the bill and demurrer, for the consideration of the full court.

*B. F. Thomas*, for the defendants. 1. If the bequest had remained as under the will, Mary B. Sawyer might, by a last will and testament, have devised one half of the amount given to her, without the assent of her husband, to third parties; and might have devised the whole to him. If she had died intestate, her husband would have taken the whole under the statute of distributions. Gen. Sts. *c.* 108, §§ 1, 9. To prevent these results, or any of them, the codicil was made, the testator's intent and purpose being that his daughter's husband should not have any share of, or benefit from, his estate. This purpose, manifested in the will itself, is the chief end and aim of the codicil. Seeing that the will failed to accomplish this purpose, the testator made the codicil by which he devised one sixth part of the residue, given to Mary B. Sawyer by the will, to trustees, with directions to pay out of the income (and it would seem of the principal) sufficient for her comfortable support and maintenance during life; and in the contingency of her surviving her husband, the "remaining" portion to be paid to her in full; that is to say, he gave to Mary B. an equitable life estate, capable of being em-

larged in the contingency (which has not happened), to wit, that she survived her husband, and when the peril from which he was seeking to guard her would no longer exist. *Stevens* v. *Winship*, 1 Pick. 318. *Palmer* v. *Stevens*, 15 Gray, 343. *Andrews* v. *Bank of Cape Ann*, 3 Allen, 313. *Larned* v. *Bridge*, 17 Pick. 339. *Barrus* v. *Kirkland*, 8 Gray, 512.

A construction of the codicil which gives to the daughter the power of devising the estate utterly defeats the object and purpose of the testator; because she might devise the whole to her husband, or, if she died intestate, he would take the whole; or, in a third contingency, if she made a will, giving the property to others, he might claim one half.

2. There is a narrower view of the will and codicil which is fatal to the bill, and that is, no portion of the principal of the trust fund is to be paid over during the lifetime of the husband, and he is still alive. No power of appointment is given to the daughter by the will or codicil in terms or by implication. Such power, if it were possible to infer it from the will and codicil, would be equally in conflict with the obvious intent and purpose of the testator.

To effect the object and purpose and plain intent of the testator, the payment over of any part of the principal cannot take place till the death of the husband of Mary B. Sawyer. To give effect to the purpose and intent of the testator, as well as to the presumption of law that the testator means to have no property undevised, the remainder after Mary B. Sawyer's life estate may be held to fall into the residue and pass to the residuary legatees other than Mary B. *Thayer* v. *Wellington*, 9 Allen, 283, 297, 298, and cases cited.

*J. A. Gillis*, for the plaintiff.

ENDICOTT, J. The question in this case is whether the share of Mary B. Sawyer goes to her executor, or falls into the residue of Jason Chamberlain's estate as intestate property, to be distributed among all his residuary legatees.

In deciding this question, the intent of the testator is to be gathered, not only from the codicil, but from the provisions of the will, so far as those provisions are not altered by the codicil. For it is an established rule of construction that the codicil shall change the will only so far as the intent is manifest; and the

provisions of the will are not to be disturbed further than is necessary to give effect to the codicil. *Quincy* v. *Rogers*, 9 Cush. 291, 295. 1 Jarman on Wills, 160.

By the will, it is clear that Mrs. Sawyer was to take a vested interest in one share absolutely on the death of the testator, and that he intended by his will to dispose of his whole estate. And, in our opinion, it is equally clear that the testator did not intend by the codicil to alter the provision vesting one share of the residue in Mrs. Sawyer, but only to postpone the time of payment. This is evident from a careful examination of the language of the codicil. There is no devise over showing that the testator intended to change the will in this respect. The share is not devised in terms to trustees, but only that it shall be held in trust, and no other trust is named except to provide for her support; and the share thus to be held in trust is referred to and described as the share bequeathed in the will. The trustees are not limited to the income in providing for her support, but they are to pay her " a sufficiency for her comfortable support and maintenance " during her life. This indicates, in the absence of a devise over, an immediate beneficial interest, and a postponement only of the time of payment. *Eldridge* v. *Eldridge*, 9 Cush. 516. *Fuller* v. *Winthrop*, 3 Allen, 51, 60. In all the cases cited by the defendants to show that a right to expend the principal by a tenant for life does not enlarge the gift and make it a legacy, there is a devise over on the death of the party having the beneficial interest during life. In the event of the death of her husband, " all the remaining portion of her share of my estate shall then be paid over to her," as if the property was hers, although for a certain time to be held by trustees. In stating the purpose of the codicil, he uses the words, " thus limiting the payment in full during the lifetime of the husband," implying postponement only of the time of payment.

Nor can we give the construction to the last clause for which the defendants contend, that the testator intended under all circumstances to prevent the husband from having any benefit in his estate, and, therefore, that it must be inferred that he did not intend the share should vest in her, but that it should remain intestate property. The effect of this construction would be to control the evident intent of the testator in his will to dispose of all his property.

The words " my purpose in thus limiting the payment of my said daughter's share of my estate during the lifetime of her said husband, is to prevent," &c., must be taken to refer to the preceding clause, clearly indicated by the use of the word " thus," and to apply to the provisions that are there made. Those provisions refer only to her maintenance during life, and the payment of the residue to her, if she survives her husband. In other words, it was the intention, as expressed, to prevent the husband from having any benefit in the estate during the lifetime of the wife.                · *Decree for the plaintiff*.